UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID SMITH,

        Petitioner,

                                    CASE NO. 05-CV-74045-DT
v.                                   HONORABLE DENISE PAGE HOOD

WILLIE O. SMITH,

        Respondent.

                                         /

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

David Smith ("Petitioner"), a Michigan prisoner, has filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his

constitutional rights. Petitioner was convicted of one count of first-degree criminal sexual

conduct and two counts of second-degree criminal sexual conduct following a bench trial in the

Wayne County Circuit Court in 2001. Petitioner was sentenced to concurrent terms of 20 to 40

years imprisonment and seven to 20 years imprisonment on those convictions. In his pleadings,

Petitioner raises claims concerning his right to counsel, his waiver of the right to counsel, his

right of self-representation, and the sufficiency of the evidence. For the reasons stated below,

the petition for writ of habeas corpus is denied.

I.      **Facts**

Petitioner's convictions arise from his sexual assault of his 10-year-old daughter, Laqueta

Westbrook, while she was temporarily residing with him at her grandmother's house in Detroit,

Michigan on July 12, 1999. Prior to trial, the trial court appointed counsel to represent Petitioner

in his criminal case. When Petitioner became dissatisfied with that attorney, the trial court

appointed new counsel. When Petitioner became dissatisfied with his second attorney and said

that he wanted to represent himself, the trial court appointed a third attorney and said that the

roles of Petitioner and defense counsel would be discussed at a future date. The third attorney

then made repeated requests for an adjournment. In response, on March 19, 2001, the trial court

appointed a fourth attorney, James O'Donnell, to represent Petitioner.

At a hearing on July 13, 2001, Petitioner asserted his right of self-representation. The

trial court then questioned Petitioner about his decision to represent himself and warned him of

the dangers and difficulties of doing so. Petitioner stated that he still wished to represent himself

and that he wanted his fourth appointed counsel to remain as standby counsel. He then reviewed

and signed a waiver of right to counsel form, but crossed out and initialed the sentence, "I do not

want standby counsel." Petitioner confirmed that he understood his decision and said that he had

no questions about the waiver form. Petitioner proceeded to trial with James O'Donnell and

another attorney, David Lankford, assisting him. During the course of trial, Petitioner invited

substantial participation by those attorneys, including the delivery of his opening statement and

the questioning of certain witnesses. The trial court required that Petitioner's counsel conduct

any cross-examination of Laqueta Westbrook and denied Petitioner's request to personally

question her. The trial court indicated that Petitioner could write out questions for counsel,

control counsel's actions, and consult with counsel question by question throughout the

examination. The trial court based its ruling on the fact that Westbrook was Petitioner's

daughter and was 10 years old at the time of the incident and 12 years old at the time of trial.

The court recognized that Petitioner was an authority figure to her and expressed concern about Westbrook's well-being and the truth-finding process. The court also noted that Petitioner had exhibited anger during a prior court proceeding which required him to be removed from the courtroom.

During trial, Laqueta Westbrook testified about the assault. She said she was sleeping at her grandmother's house on July 12, 1999, but was awakened by Petitioner touching her buttocks. Petitioner then moved her shorts to the side, touched her private area, and inserted his finger into her vagina. Westbrook also testified that Petitioner inserted his penis twice into her vagina as she lay on her stomach. She said that she saw Petitioner's shadow and saw him zip up his pants. When she went to the bathroom after the assault, she saw a clear liquid on her vaginal area and underwear. Petitioner came into the bathroom, ordered her to wash herself, and washed out her underwear. Westbrook told her grandmother about the assault later that night. The grandmother took Westbrook to her aunt's house and called Westbrook's mother who lived in Lansing, Michigan. Westbrook's mother picked her up and then took her to Sparrow Hospital in Lansing for an examination.

The examining nurse observed redness and blood under the skin of Westbrook's hymen, as well as a laceration in the genital area. The examining physician performed a rape kit and observed chafing and bruising on a portion of Westbrook's hymen, blisters and scraping near the hymen, and a slight tear at the edge of the vulva. Testing also revealed fluorescence around Westbrook's private area, the back of her thighs and her buttocks, which indicated the presence of seminal fluid. The nurse and physician were of the opinion that Westbrook's vagina had been penetrated by either a finger, a penis, or both.

A forensic scientist testified that the presence of sperm was detected in vaginal smears and swabs taken from the victim. A DNA expert found that one sample taken from the victim contained DNA which matched the Petitioner's DNA at nine of 13 loci. The expert stated that the DNA profile would be expected to occur in one in 48.6 trillion Caucasians, one in 59.2 trillion Blacks, and one in 8.6 trillion Hispanics. The laboratory report labeled the findings as inconclusive, however, because testing was based upon a minimal sample and one of the markers would fall below the required threshold.

Laqueta Westbrook's mother and grandmother, and police officers also testified at trial. Those witnesses essentially addressed Westbrook's reporting of the sexual assault and the actions that were taken in response. Petitioner did not testify at trial nor present any additional witnesses. His motion for a directed verdict was denied.

At the close of trial, the trial court found Petitioner guilty of one count of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct. The trial court subsequently sentenced Petitioner to 20 to 40 years imprisonment on the first-degree criminal sexual conduct conviction and to concurrent terms of seven to 20 years imprisonment on the second-degree criminal sexual conduct convictions.

## II.     Procedural History

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, raising the same claims contained in the present petition. The Michigan Court of Appeals affirmed Petitioner's convictions in a *per curiam* decision. *People v. Smith*, No. 239297, 2004 WL 32732 (Mich. Ct. App. Jan. 6, 2004) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which

was denied.  *People v. Smith*, 471 Mich. 927, 689 N.W.2d 230 (2004).

Petitioner thereafter filed his federal habeas petition, raising the following claims:

I.      As a result of the trial court allowing him to represent himself in certain portions of the trial and to rely on attorneys for other portions, any waiver of the right to representation by an attorney was not unequivocal, and he was denied his Sixth Amendment right to representation.

II.     As a result of the trial court's failure to affirm his waiver of the right to counsel before each proceeding, he was denied his right to representation.

III.    By not allowing him to cross-examine the complaining witness, the trial court violated his right to self-representation.

IV.     The competent evidence was not sufficient to overcome the presumption of innocence.

Respondent has filed an answer to the petition asserting that it should be denied for lack of merit.

## III.    Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his

habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336

(1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

 28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings

of the Supreme Court, the decisions of lower federal courts are useful in assessing the

reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d

667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness

on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption

with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.

1998).

## IV.    Analysis

### A.    Denial of Right to Counsel Claim (Habeas Claim I)

Petitioner first asserts that he is entitled to habeas relief because the trial court allowed

him to proceed with hybrid representation and he did not unequivocally waive his right to

counsel.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant

the right to the assistance of counsel, *see Powell v. Alabama*, 287 U.S. 45, 53 (1932); *see also*

*Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972); and gives an indigent criminal defendant the

right to the assistance of court-appointed counsel. *See Gideon v. Wainwright,* 372 U.S. 335,

343 (1963). The Sixth Amendment also grants a criminal defendant the right to self-

representation, if he voluntarily and intelligently elects to do so. *Martinez v. Court of Appeal of*

*California*, 528 U.S. 152, 153 (2000); *Faretta v. California*, 422 U.S. 806, 819 (1975). A

waiver of the right to counsel must be voluntary, knowing and intelligent. *Iowa v. Tovar*, 541

U.S. 77, 88 (2004); *Faretta*, 422 U.S. at 835; *Jones v. Jamrog*, 414 F.3d 585, 593 (6th Cir.

2005). "The determination of whether there has been an intelligent waiver of the right to

counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Tovar*, 541 U.S. at 92. Additionally, a criminal defendant who seeks to proceed *pro se* must generally be aware of the risks of self-representation so that "he knows what he is doing and his choice is made with eyes open." *See Faretta*, 422 U.S. at 835. The right to counsel and the right to defend oneself are viewed as correlative rights in that waiver of one necessarily constitutes an assertion of the other. *See United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970); *see also United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2005).

In this case, the Michigan Court of Appeals discussed this issue at length and rejected Petitioner's claim that he was denied his right to counsel because the trial court allowed him to proceed with hybrid representation. The court found that Petitioner was sufficiently advised of the perils of self-representation and firmly and unequivocally insisted on his right to represent himself with the assistance of standby counsel. *See Smith*, 2004 WL 32732 at *1-5.

Having considered the matter, the Court concludes that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts in light of the record. Petitioner knowingly, voluntarily, and unequivocally asserted his right to represent himself during his criminal proceedings – with the assistance of standby counsel. *See* 7/13/01 Hrg. Tr., pp. 5-10. Petitioner was 33 years old, had a 10th grade education, indicated slight familiarity with the court rules, and reviewed and signed a "Waiver of Right to Attorney and Acknowledgment of Danger of Self-Representation Form." The trial court advised Petitioner of the charges against him, his right to counsel, and

8

the dangers of self-representation. Petitioner affirmed that he wished to represent himself with the assistance of standby counsel and that he had no doubt about his decision. The record thus reflects that Petitioner knowingly, voluntarily, and unequivocally waived his right to counsel and elected to represent himself with the assistance of standby counsel.

The fact that the trial court appointed standby counsel, who assisted Petitioner throughout the trial, does not make Petitioner's request to represent himself equivocal. *See McKaskle v. Wiggins*, 465 U.S. 168, 176-77 (1984) (holding that *pro se* defendant's Sixth Amendment right to conduct his own defense was not violated by the unsolicited participation of standby counsel). While there is no constitutional right to "hybrid" representation or standby counsel, a trial court has discretion to allow a defendant to proceed in such a fashion. *See McKaskle*, 465 U.S. at 183; *see also United States v. Mosely*, 810 F.2d 93, 97-98 (6th Cir. 1987). Petitioner acknowledged his understanding of the trial court's actions and accepted this scenario on the record. The trial court conducted the proceedings in a manner which allowed Petitioner to represent himself and to utilize defense counsel as he saw fit. Petitioner cannot now complain that he was denied the right to counsel at trial. *See United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir. 1998) (finding, in a similar situation, that "the district court made a commendable effort to honor [the defendant's] decision to represent himself while providing him meaningful assistance of standby counsel"); *United States v. Treff*, 924 F.2d 975, 979 (10th Cir. 1991) (noting that defendants may play "cat and mouse" games in making requests for self-representation). Having reviewed the record, the Court concludes that Petitioner has not established that he was unconstitutionally denied the right to counsel – nor has he shown that he failed to sufficiently waive his right to counsel and elect to represent himself (with the

assistance of standby counsel). Habeas relief is not warranted on this claim.

**B.     Waiver of Right to Counsel/State Law Issue (Habeas Claim II)**

Petitioner relatedly asserts that he is entitled to federal habeas relief because the trial

court failed to re-affirm the waiver of his right to counsel before each proceeding in violation of

Michigan Court Rule 6.005(E).  However, a state court's alleged failure to properly apply its

own procedural rules, even if established, is not cognizable on federal habeas review.  This

Court's power to grant a writ of habeas corpus only extends to errors in the application of

federal law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1975).  Habeas relief is unavailable

for mere errors of state law and a federal court will not review a state court's decision on a

matter of state law.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Long v. Smith*, 663

F.2d 18 (6th Cir. 1981).  Because Petitioner seeks federal habeas relief based upon an alleged

violation of state procedural law, habeas relief is not warranted on this basis.

Furthermore, as discussed *supra*, Petitioner knowingly, voluntarily, and unequivocally

elected to represent himself, with the assistance of counsel, during his trial.  The trial court's

failure to comply with MCR 6.005(E) is irrelevant.  The question on habeas review is not

whether the state court made an error of state law, but rather whether Petitioner was deprived of

a constitutional right and thereby of a fair trial.  As the Sixth Circuit has explained with respect

to waiver of the right to counsel, the courts "have adopted a . . . nonformalistic approach to

determining the sufficiency of the waiver from the record as a whole rather than requiring a

deliberate and searching inquiry."  *United States v. McDowell*, 814 F.2d 245, 249 (6th Cir.

1987).  The question before this Court is not whether the trial court complied with any formal

criteria such as those in MCR 6.005(E); but rather whether "a fair reading of the record as a

whole" leads to the conclusion that Petitioner "understood the dangers and disadvantages of self-representation at the time he made his choice . . . [and] elected to defend himself at trial with his 'eyes open.'" *Id.* at 248. The record in this case supports such a conclusion. Habeas relief is not warranted on this claim.

C.      **Right to Self-Representation Claim (Habeas Claim III)**

Petitioner next asserts that he is entitled to habeas relief because the trial court violated his right of self-representation by refusing to allow him to personally cross-examine the complaining witness, Laqueta Westbrook, his 12-year-old daughter, who was 10 years old at the time of the assault.

Although a defendant has the right to represent himself in criminal proceedings, the right of self-representation is not absolute. *See Martinez*, 528 U.S. at 161. "Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.* at 162; *see also Faretta*, 422 U.S. at 834-35 n.46; *United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir. 2000). As previously noted, there is no constitutional right to the assistance of standby counsel or hybrid representation – such matters are left to the sound discretion of the trial court. *See McKaskle*, 465 U.S. at 183 ("a defendant does not have a constitutional right to choreograph special appearances by counsel"); *Cromer*, 389 F.3d at 682 n. 12; *Mosely*, 810 F.2d at 97-98. The decision to permit the accused "to examine some but not all the witnesses must be left to the sound discretion of the district court." *United States v. Sherwood*, 199 Fed. Appx. 373, 376 (5th Cir. 2006) (citing *United States v. Norris*, 780 F.2d 1207, 1211 (5th Cir. 1986), and *McKaskle, supra*); *accord Treff*, 924 F.2d at 979 n. 5; *United States v. Nivica*, 887 F.2d 1110,

11

1121 (1st Cir. 1989) (trial court has discretion to place reasonable limits and conditions upon

hybrid representation arrangement).

"In determining whether a defendant's *Faretta* rights have been respected, the primary

focus must be on whether the defendant had a fair chance to present his case in his own way."

*McKaskle*, 465 U.S. at 177.  In *McKaskle*, the Supreme Court set forth two limits on the

unsolicited participation of standby counsel.  "First, the *pro se* defendant is entitled to preserve

actual control over the case he chooses to present to the jury....Second, participation by standby

counsel without the defendant's consent should not be allowed to destroy the jury's perception

that the defendant is representing himself."  *Id*. at 178.

In this case, the Michigan Court of Appeals concluded that the trial court did not abuse

its discretion in denying Petitioner's request to cross-examine the victim due to the danger that

the proceedings would be disrupted.  *See Smith*, 2004 WL 32732 at *6-7.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts.  Petitioner's request

required that he be allowed to personally cross-examine the victim, his minor daughter, whom

he was accused of sexually assaulting.  The state had a strong interest in protecting the physical

and emotional well-being of the child victim from this confrontation.  *See Maryland v. Craig*,

497 U.S. 836, 851-57 (1990) (upholding state statute permitting child sexual assault victim to

testify via closed-circuit television under the Sixth Amendment Confrontation Clause; state's

interest in protecting child-victim outweighed defendant's interest in physical, face-to-face

confrontation).  As another court has observed,

> [i]f a defendant's Confrontation Clause right can be limited in the manner
> provided in *Craig*, we have little doubt that a defendant's self-representation

12

> right can be similarly limited. While the Confrontation Clause right is guaranteed explicitly in the Sixth Amendment, the self-representation right is only implicit in that Amendment. The self-representation right was only firmly established in 1975 in *Faretta*, and then only over the dissent of three justices. Moreover, it is universally recognized that the self-representation right is not absolute.

*Fields v. Murray*, 49 F.3d 1024, 1035 (4th Cir. 1995) (citations omitted) (upholding trial court's refusal to allow the defendant to personally cross-examine child sexual abuse victim); *see also Lewine v. State*, 619 So. 2d 334, 335-36 (Fla. Ct. App. 1993); *State v. Estabrook*, 842 P.2d 1001, 1006 (Wash. Ct. App. 1993); *State v. Taylor*, 562 A.2d 445, 454 (R.I. 1989). Additionally, as noted, the trial court had a strong interest in protecting the integrity of the proceedings. *See, e.g., Martinez*, 528 U.S. at 161. Given the circumstances of this case, *i.e.*, that the victim was Petitioner's minor daughter, that the case involved a sexual assault, and that Petitioner had previously exhibited anger in the courtroom, this Court concludes that the trial court reasonably exercised its discretion in denying Petitioner's request to personally cross-examine Laqueta Westbrook.

Furthermore, Petitioner had a fair chance to present his case in his own way and his right of self-representation was sufficiently protected. First, the trial court gave Petitioner the opportunity to prepare defense counsel's questions for the victim, to control counsel's conduct during cross-examination, and to consult with counsel on each question. The record indicates that counsel conducted a thorough examination. Second, there was no danger of jury mis-perception since the matter was tried before the bench without a jury. Lastly, the Court finds it relevant that Petitioner invited significant participation by defense counsel throughout the trial. The Court thus concludes that Petitioner's right of self-representation was not unconstitutionally infringed by the trial court's refusal to allow him to personally cross-examine

13

the victim.  Habeas relief is not warranted on this claim.

      **D.**      **Insufficient Evidence Claim (Habeas Claim IV)**

Lastly, Petitioner asserts that he is entitled to habeas relief because the prosecution

failed to present sufficient evidence to support his convictions.  In *Jackson v. Virginia*, 443 U.S.

307 (1979), the United States Supreme Court established that a federal court's review of a

sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  *Id.* at 319; *see also Warren*, 161 F.3d at

360.  The Court must view this standard through the framework of 28 U.S.C. § 2254(d).  *See*

*Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Further, the *Jackson* standard must be

applied "with explicit reference to the substantive elements of the criminal offense as defined

by state law."  *Jackson*, 443 U.S. at 324 n. 16.  "The mere existence of sufficient evidence to

convict therefore defeats a petitioner's claim."  *Matthews v. Abramajtys*, 319 F.3d 780, 788-89

(6th Cir. 2003) (citation omitted).

Under Michigan law, the elements of first-degree criminal sexual conduct involving a

child under 13 years of age are that the defendant engages in sexual penetration with a person

under 13 years of age.  MICH. COMP. LAWS § 750.520b(1)(a); *People v. Hammons*, 210 Mich.

App. 554, 557, 534 N.W.2d 183 (1995); *see also Bower v. Curtis*, 118 Fed. Appx. 901, 905 (6th

Cir. 2004).  "Sexual penetration" is defined, in relevant part, as "sexual intercourse ... or any

other intrusion, however slight, of any part of a person's body or of any object into the genital

or anal openings of another person's body."  MICH. COMP. LAWS § 750.520a(1).  A person is

guilty of second-degree criminal sexual conduct "if the person engages in sexual contact with

14

another person" and the "other person is under 13 years of age." MICH. COMP. LAWS §

750.520c(1)(a); *People v. Lemons*, 454 Mich. 234, 252, 562 N.W.2d 447 (1997). "Sexual

contact" is defined as the intentional touching of the victim's or actor's intimate parts or the

intentional touching of the clothing covering the immediate area of the victim's or actor's

intimate parts, if that intentional touching can reasonably be construed as being for the purpose

of sexual arousal or gratification. MICH. COMP. LAWS § 750.520a(k). "Intimate parts" include

the primary genital area, groin, inner thigh, buttock, or breast of a human being. MICH. COMP.

LAWS § 750.520a(c).

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that the

prosecution presented sufficient evidence to support Petitioner's first-degree and second-degree

criminal sexual conduct convictions. *See Smith*, 2004 WL 32732 at *7-8. Having reviewed the

record, this Court agrees and concludes that the Michigan Court of Appeals' decision is neither

contrary to Supreme Court precedent nor an unreasonable application of the law or the facts.

The verdict was supported by the victim's testimony detailing Petitioner's assault, the testimony

of medical personnel who opined that sexual penetration occurred, the physical evidence which

indicated the presence of seminal fluid on the victim's intimate parts, and the DNA test results.

Given such evidence, a rational factfinder could reasonably conclude that Petitioner committed

first-degree and second-degree criminal sexual conduct upon his daughter.

Petitioner's insufficient evidence claim challenges the credibility and weight to be

accorded the evidence presented at trial. However, it is well-settled that "[a] federal habeas

corpus court faced with a record of historical facts that supports conflicting inferences must

presume - even if it does not affirmatively appear in the record - that the trier of fact resolved

any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v.*

*Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).  It is the job of the jury, not a federal habeas court,

to resolve evidentiary conflicts.  *See Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618.  Given

the evidence at trial, this Court finds that the Michigan Court of Appeals' determination that a

rational trier of fact could find the elements of first-degree and second-degree criminal sexual

conduct beyond a reasonable doubt was reasonable.  Habeas relief is not warranted.

**V.      Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal

habeas relief on the claims presented in his petition.

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.


s/ DENISE PAGE HOOD
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED: May 31, 2007


I hereby certify that a copy of the foregoing document was served upon counsel of
record on May 31, 2007, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager

16